*In re* ATTORNEY GENERAL, etc.

Filed January 11, 1886.

ATTORNEY GENERAL DE FACTO—PRESUMPTIONS.

In an informal proceeding to determine the right to the office of attorney general between two parties, one of whom claims under an appointment by the present governor, and the other under an appointment previously made for a term not yet expired, according to a commission exhibited in court, the court presumes, from the presence of the latter party, that he is not dead, and from his acts and declarations that he has not resigned, and decides, accordingly, that he is *de facto* attorney general; the question as to who is so *de jure* being reserved for determination until such time as a proper case shall have been formally submitted and heard.

LONG, C. J. Col. William Breeden and Hon. N. B. Laughlin are before this court each claiming that he is the attorney general of the territory of New Mexico, and entitled to recognition as such, and to exercise the functions of that office. The duty is therefore upon the court to determine who shall be recognized. On the fourth day of the term, cause No. 175, "*Territory of New Mexico v. John Kinney,*" was called, whereupon Mr. Breeden, assuming to be attorney general, as such appeared therein for the territory, and was proceeding to take action when he was interrupted by Mr. Laughlin, who addressed the court, claiming to be the attorney general both *de jure* and *de facto*, and presented in support of such claim a commission, in all particulars regular upon its face, signed by Edmund G. Ross, governor of

the territory of New Mexico, properly sealed and attested, bearing date November 15, 1885, together with the oath of office thereon. Under this commission and oath of office Mr. Laughlin asked to be recognized by the court as attorney general, and to be allowed to appear as such, to the exclusion of Mr. Breeden, who then presented to the court a commission, in all particulars regular and formal, signed "LIONEL A. SHELDON, Governor of New Mexico," duly sealed and attested, together with the oath of office, and demanded the right to proceed as attorney general. His commission bore the date April, A. D. 1884. By permission, Judge WARREN addressed the court on behalf of Mr. Laughlin, and Judge BELL and Mr. Knaebel for Mr. Breeden.

In this way the question is before the court, who shall be recognized as attorney general *de facto?* It is not a proceeding in *quo warranto,* or a voluntary appearance by parties under a stipulation, or an issue legally joined in a court with jurisdiction to render a judgment binding on the parties after a judicial examination of the evidence. The contestants have not come here in any way to submit to the jurisdiction of the court, and ask judgment on the *merits* of their respective claims. The question is here, under these circumstances, rather in the nature of an inquiry by the court to determine who is the *de facto* officer. In the proper exercise of its functions in the transaction of public business the court must in this informal manner determine who is the attorney general in fact, for the time being, upon such facts as are before it on the face of the respective commissions, and with those of which the court may take judicial notice. We shall not determine who is the officer *de jure* holding legal title. To procure a determination of that matter an issue binding on the parties must be made.

It is contended in behalf of Mr. Laughlin that inasmuch as he holds the commission latest in date the court should presume, in favor of his claim, the commission lawfully issued; that the presumption of law is the officer executing it did so only within his legal powers. This may be true as a general rule, but it is equally true that the court, in acting of its own motion to ascertain who are its officers, must also know, as matters of law, not only the extent, but also the legal limit, of executive power, as declared by its own decided cases. The court must take notice of its own decisions; and where, in its adjudications, the power of the executive has been defined and declared, the court will not presume against its own rule, the existence of wider authority.

In the case of *Territory* v. *Stokes,* 2 N. M. 63, the power of the governor to appoint an attorney general during a recess of the territorial council was carefully considered by this court upon full argument. It was there clearly held that when a vacancy in the office of attorney general occurred "by death or resignation during the recess of the legislative council," the governor might appoint to fill such vacancy, but not to fill one occurring in any other way. Under the

facts reported in that case, it was held the office of attorney general was vacant otherwise than by the death or resignation of the incumbent, and the governor wholly without legal power to fill the same, and so, for want of this legal right, the office continued for some time vacant.

That decision stands as the declared law, and we are bound to respect it until overruled or modified in a regular proceeding. This court would not be in the rightful exercise of power, under the circumstances here, with neither cause, parties, nor issues before it, in attempting to modify or reconsider its own adjudication regularly made. That cause stands, not as the opinion of the judges upon the bench, but as the solemn adjudication of the highest judicial tribunal of the territory, binding upon this court, and must be to us, in this informal consideration, the measure of the governor's power to appoint. The inquiry, then, must be, was Mr. Laughlin appointed to fill a vacancy in the office of attorney general arising by death or resignation?

It is conceded Mr. Breeden's term had not expired by limitation. We are asked to presume that, at the date of Mr. Laughlin's commission, Mr. Breeden was either dead, or had resigned, in order to give effect to the act of a co-ordinate branch of the government. Is there any unyielding rule of law calling upon the court to ignore every other fact and act upon such a presumption? If so, it is the duty of this tribunal to follow the rule. While it is the duty of each department, as far as can legally be done, to give to every other due consideration, respect, and credit, yet, in applying this principle, each particular case must, subject to legal rules, stand upon its own facts. The presumption sought to be maintained here may be rebutted and overcome. With Col. Breeden in the very presence of the court, transacting business there in person, could the court presume him dead? Certainly not. Suppose, to illustrate, court had been for a month, at the date of Mr. Laughlin's commission, in session, and during every day of that time Mr. Breeden had in person appeared therein as attorney general, exhibiting his commission, and acting thereunder in prosecution of causes, thus bringing openly to the knowledge of the court his continuous claim to the office; and while so engaged a commission as attorney general were presented from the executive department, with claim to the office, would any court, under such conditions, presume resignation, and thus exclude the possessor from his place? We believe not. In this inquiry, however it might be upon a regular issue, the court is not bound by any strict rule compelling the adoption of a technical presumption, excluding a consideration of important facts of such prominent, open, and notorious public character as to be matter of general public history, and thereby within the judicial knowledge of the court.

The court should also take cognizance of its own records and proceedings, with the daily personal appearance of the attorney general

before it, in the discharge, in fact, of official duty. Such records carry to the court, without other proof, knowledge that Mr. Breeden has continuously appeared herein as attorney general, and herein performed the duties of his office. These facts, thus before us, with his appearance, in the open discharge of official duties, continuously in the various courts of the territory, in the most public manner, receiving herein official recognition by the judges of this court, and allowance therefrom for services as attorney general, both before and after the date of Mr. Laughlin's commission, the continuous assertion in the most vigorous and public manner, in the courts and through the public press, of his intention and right to hold under his commission, with his appearance here in causes of the territory as attorney general, are matters which the court may legally know, without proof, as matter of judicial knowledge, and constitute such an actual presence in and possession of office under claim of right as to rebut the presumption of resignation. We cannot legally turn away from these facts to permit an officer so openly and notoriously in possession of office in fact, in the very presence of the court, to be informally excluded, by presumption, without trial of his legal right, upon the mere demand, under such circumstances, of a contestant.

Other facts are properly within the judicial knowledge of the court. The executive has made open and public announcement, through the press and by circular proclamation, of his right to remove Mr. Breeden, of the fact of removal, with statement of the alleged cause, thereby making this executive action a conspicuous part of the current public history of the territory. Further, the executive department of the territorial government brought officially to the notice of a majority of the judges of this court, by formal written communication, the fact that Mr. Breeden was by the governor removed from the office of attorney general for cause. This was done, no doubt, to place before the judicial department of the territory, in a formal way, knowledge, upon which it should act, of the official action of a co-ordinate branch of the territoral government. Shall the court presume such communication was for no public purpose, or, treating the executive department with that high respect to which it is entitled, give the communication to this department the dignity and force it deserves, as official information of the formal assertion by the executive of the right of removal? Certainly the latter.

Thus the presumption upon which Mr. Laughlin relies is overcome here by the considerations stated. This court must consider and give effect to its own record; to the appearance in office, in the actual discharge of duty in the courts, of its officer; to the public proclamation of the executive; to the most open and notorious public facts of current history in the territory; to the executive communications to the courts,—rather than presume against them all, to thereby exclude a public officer from place, while in possession and discharging official duty. We pass upon no question of executive power or legal

right, except, on this informal inquiry, to presume the law on that subject to be as declared by the highest judicial tribunal of the territory, until overruled or modified by a cause in court. If the judgment of this tribunal is to be invoked as to the correctness of that decision, it must be upon a cause in court, with proper parties and issues. Authority is not cited in support of this ruling, as it is believed the principles upon which it is made are so well settled and universally recognized as to commend themselves without citation.

The court will recognize Mr. Breeden as the *de facto* attorney general. In this ruling, as to all its parts, each member of the court fully concurs.

BRINKER and HENDERSON, JJ., concur.